IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARY SUTTLE AND BOSONG DAI,, INDIVIDUALLY, AND d/b/a G & B TECHNOLOGIES, INC. | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 4:08-CV-00858 |
| LANDSTAR INWAY, INC., | § § § | |
| Defendant. | § | |

## LANDSTAR INWAY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

COMES NOW, Defendant, LANDSTAR INWAY, INC. ("Landstar"), and pursuant to Rule 56 Fed. R. Civ. P. moves the Court to grant partial summary judgment as more particularly set forth below, and in support thereof shows the Court as follows:

### I. INTRODUCTION

**A.      Procedural Background and Basis Upon Which Summary Judgment is Sought.**

1.      Plaintiffs, GARY SUTTLE AND BOSONG DAI, d/b/a G & B TECHNOLOGIES, INC. ("Plaintiffs"), filed suit in the 269th Judicial District Court of Harris County, Texas on January 18, 2008. Plaintiffs' Original Petition ("Petition") states that Plaintiffs seek recovery of damages to a CNC Machine which was transported by Landstar from the shipper, Delphi located in Dayton, Ohio to Plaintiffs in League City, Texas. Plaintiff's claim the CNC Machine suffered water damages during transport. (Petition, ¶ IV). Landstar timely removed this matter to this Court on March 17, 2008 based upon federal question jurisdiction as the claims of the Plaintiffs are governed by the Carmack Amendment, 49 U.S.C. § 14706.

2. Defendant Landstar now moves the Court for summary judgment dismissing with prejudice all of Plaintiffs' state and common law claims for breach of contract, negligence, and to the extent pled, for recovery of attorneys fees, against Defendant Landstar. As shown below, as a matter of law, the claims of Plaintiffs against Defendant Landstar are governed by and controlled by the Interstate Commerce Act, and, in particular, the Carmack Amendment, 49 U.S.C. § 14706 which is paramount to, and pre-emptive of all state and common law claims.

3. Defendant Landstar also moves for summary judgment on Plaintiffs' claims for damages in the form of lost profits/lost income as those are claims for special damages which are not recoverable under the Carmack Amendment <u>under the facts presented this Court</u>. As such, Landstar seeks summary judgment dismissing all the claims of the Plaintiff for special damages, including but not limited to lost profits, as they are not for damage or loss to the CNC Machine transported by Landstar.

4. Landstar also seeks summary judgment on Plaintiffs' claim for special damages in the form of lost profits/lost income as those claims are completely speculative, and the amount of loss claimed cannot be shown by competent evidence with reasonable certainty. Therefore, lost profits are not recoverable under applicable Texas law.

5. Finally, Landstar seeks summary judgment that Landstar's liability, if any, for all damages sought by Plaintiff herein is limited by the bill of lading provision expressly declaring the value of the goods transported, the CNC Machine, to be the sum of $10,000.00 (plus freight charges actually paid), which value, not surprisingly, equates to the purchase price of the used machinery Plaintiffs claim was damaged by Landstar.

**B.     Factual Basis for Summary Judgment – Statement of Facts**

6. Landstar is a motor carrier in the business of transporting freight in intrastate, interstate and foreign commerce. Plaintiffs claim that on October 13, 2006 Delphi, the shipper, delivered goods to Landstar for transportation from Dayton, Ohio to Plaintiffs in Texas. Plaintiffs claim that Landstar failed to adequately tarp the goods for transportation, and that while the goods were being transported, the CNC Machine at issue suffered damages from rain which rendered the CNC Machine "unsafe and unmarketable." (See, Petition, ¶ IV.). The following undisputed facts support this motion for summary judgment:

a. Plaintiffs, Gary Suttle and Bosong Dai, are partners in a business operated as G & B Technologies, Inc. ("G & B") which was first formed in 2004 or 2005. (See, Oral Deposition of Boson Dai (Exhibit "1" hereto), p. 12, ll. 9 - 23; p. 14, l. 23 - p. 15, l. 10).

b. G & B does not and has never operated a machine shop where these type of machines were actually utilized in operation. G & B has only been operated out of an office which Plaintiffs describe as an executive suite at an office building. (Id., p. 13, l. 14 - p. 14, l. 25).

c. To date, the only business conducted by G & B with respect to these type of machines has been to buy them for subsequent sale, or to trade them, but never to operate the machines in their business. (Id., p. 16, l. 23 - p. 17, l. 18)

d. Without prior inspection or viewing, except for the viewing of about five (5) photos online, and without asking any questions of the seller, Plaintiffs purchased the CNC Machine at issue "AS IS, WHERE IS" and "WITH ALL FAULTS" at an internet auction for the sum of $10,000. (Id., p. 18, l. 4 - p. 22, l. 3; p. 28, l. 4 - p. 29, l. 24; Exhibit "2" hereto; and Oral Deposition of Gary Suttle (Exhibit "8" hereto), p. 9, ll. 8 - 25).

e. Plaintiff, Bosong Dai, contacted a logistics company, Avxa Freight Logistics ("Avxa"), to arrange for the transportation. (Id., p. 42, l. 1 - p. 43, l. 15; Exhibit "3" hereto). Bosong Dai was the only person that dealt with the arranging of this transportation. (Id., p. 76, l. 11 - p. 77, l. 7; p. 107, ll. 15 - 20; Gary Suttle Dep., p. 8, ll. 2 - 8, p. 13, ll. 19 - 24).

f. Plaintiffs only dealt with Avxa regarding the shipment, and Plaintiffs only provided Avxa the physical size and weight of the CNC Machine. (Id. p. 74, l. 14 - p. 77, l. 7).

g.  Plaintiffs never provided anyone, including Landstar, with any information regarding the intended use of the CNC Machine when arranging for transportation, and, in fact, Plaintiffs never even spoke to anyone at Landstar about the transportation arrangements for this shipment. (Id.; and p. 84, l. 17 - p. 85, l. 14).

h.  The CNC Machine was transported under a bill of lading/shipping document prepared by the shipper, Delphi, which contained a declared "Extended Value" of the CNC Machine in the amount of $10,000. (Id., p. 54, l. 1 - p. 56, l. 3; Exhibit "4" hereto). The shipping document prepared by the shipper, Delphi, contains the signature of the shipper's "Comptroller or Designate If No Charge." (Id.).

i.  For the first time, Plaintiffs, in their Initial Disclosures set forth a claim for the following damages, all of which are special damages as relates to the facts of this case:

### III. F.R.C.P. 26(a)(1)(C) – DAMAGES

> There are 2 options Plaintiffs had with regard to using the equipment that was damaged in the accident made the basis of this lawsuit. First, Plaintiffs had the opportunity to use the piece of equipment at their facility, and charge an outgoing rate of $100.00 to $200.00 per hour for its use. This use would be approximately 8 hours per day and 5 days per week. Thus, the lost income stemming from the damaged equipment from 10/13/06 through 09/10/08 is approximately $600,000.00, based on $150.00 per hour x 40 hours per week x 100 weeks. ...

(Exhibit "5" hereto).

j.  In response to Landstar's discovery requests for the production of documents which support the Plaintiffs' claim that this equipment could be utilized continuously 40 hours a week for, at that time, 100 weeks, Plaintiffs responded that they have "**None at this time.**" (Exhibit "6" hereto, Responses 1 and 2).

k.  Plaintiffs admit that they do not, and never have operated a machine shop which they could utilize to operate the CNC machine at issue. (Bosong Dai dep., p. 82, l. 19 - p. 83, l. 10, and 18 - 20; p. 90, l. 10 - 15).

l.  Plaintiffs admit that they do not, and never have had any contracts with any clients in order to operate the CNC machine in a machine shop operation. (Id., p. 84, l. 4 - 10; p. 86, l. 3 - p. 88, l. 2).

m.  The only "financials" Plaintiffs have provided for G & B show a net income, or, more appropriately, net loss to the partnership from operations of G & B as follows:

|      |        |
|------|--------|
| 2005 | ($763) |
| 2006 | $11    |
| 2007 | ($2)   |

(Exhibit "7" hereto).

## II. ARGUMENT AND AUTHORITIES

### A.  Summary judgment Standard

7. Summary Judgment is proper in any case where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2552 (1986). The movant seeking a federal summary judgment initially must inform the court of the basis for its motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323. A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact; however, a defendant need not negate the elements of the plaintiff's case nor produce evidence showing an absence of evidence of a genuine factual issue, but may rely upon the absence of evidence to support essential elements of opposing claims. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which it bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings but must produce affirmative evidence and specific facts. *Id.* at 256-57. It meets this burden only if it shows that "a reasonable jury could return

a verdict for the non-moving party." *Id.* at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252. Once the burden of proof has shifted to the non-movant, it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962). Instead it must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*, at 249-50. Unsubstantiated and subjective beliefs and opinions are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert denied*, 115 S. Ct. 195 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert denied*, 506 U.S. 825 (1992). The non-movant cannot discharge its burden by offering vague allegations and legal conclusions. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).

8.     Because Plaintiffs bear the burden of proof at trial on each element of the claim against Defendant, it is Plaintiffs' burden on summary judgment to establish the existence of a genuine issue of material fact as to all elements. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. As shown herein, there is not a genuine issue of material fact with respect to the issues presented by this motion.

**B.     Preemption Under the Carmack Amendment.**

9.     Plaintiffs' Petition appears to state the lawsuit was filed against Landstar for negligence, and the Plaintiffs' allegations could also be construed as a breach of contract claim. (Petition, ¶¶s IV., V. and VI). Plaintiffs' Petition alleges that Plaintiffs seek damages from Landstar for a single shipment of goods, and the applicable shipping document/bill of lading demonstrates that the shipment at issue

was one from point of origin in the State of Ohio to point of destination in League City, Texas. (Exhibit "4" hereto.). The Plaintiffs allege the goods at issue, a CNC Machine, was transported by Defendant Landstar. (Id., ¶ IV). Plaintiffs allege that when the goods arrived at destination in Texas the goods had suffered damages rendering the goods "unsafe and unmarketable." (Id.). The Plaintiffs seek damages to repair the goods which were the subject of the shipment at issue, and also seek recovery of lost profits/lost income. (Id., ¶ VI.).

10. Defendant Landstar now moves the Court to dismiss with prejudice all of Plaintiffs' state and common law claims for negligence, breach of contract, and for recovery of attorneys fees against Defendant Landstar. As a matter of law the claims of Plaintiffs against Defendant Landstar are governed by and controlled by the Interstate Commerce Act, and, in particular, the Carmack Amendment, 49 U.S.C. § 14706. The Carmack Amendment is paramount and pre-emptive of all state law remedies and precludes Plaintiff's claims other than as provided by the Carmack Amendment. *See, Hoskins v. Bekins Van Lines,* 343 F.3d 769, 778 (5th Cir. 2003)(holding complete pre-emption doctrine applies, and therefore, the Carmack Amendment provides the exclusive cause of action for such claims); *see also, Air Products & Chem., Inc. v. Illinois Cent. R. Co.,* 721 F.2d 483 (5th Cir. 1983), *cert. denied,* 469 U.S. 832 (1984); *Moffit v. Bekins Van Lines, Inc.,* 6 F.3d 305 (5th Cir. 1993); *Accura Sys., Inc. v. Watkins Motor Lines, Inc.,* 98 F.3d 874, 876 (5th Cir. 1996); and *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 382 (5th Cir. 1998). The Carmack Amendment is applicable to "carriers providing transportation or service subject to jurisdiction under subchapter I [motor carriers] or III [freight forwarders] of chapter 135..." *See* 49 U.S.C. § 14706(a)(1). The Carmack Amendment continues in relevant part as follows:

> ... That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of

> chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country where transported under a through bill of lading and,...

*Id.* As evidenced by a plain reading of the statute itself, the Carmack Amendment applies to claims for damages against interstate motor carriers on shipments transported in the United States. Therefore, even if factually accurate, all of Plaintiffs' claims based upon state and common law still fail as a matter of law. The only viable claim against Defendant Landstar is one based upon the Carmack Amendment.

**C.    Plaintiffs Cannot Recover Damages For Lost Profits/Lost Income Under The Carmack Amendment Because Landstar Did Not Have Notice Of The Consequences Or Damages Claimed To Have Resulted From Any Damages to The Goods At Issue With Respect to This Shipment** *Prior To Or At The Time The Bill Of Lading Was Issued.*

11.    Generally, a carrier's liability under the Carmack Amendment is limited to "the actual loss or injury to the property [transported] caused" by the carrier. 49 U.S.C. § 14706(a)(1). In the present matter, it is undisputed that the damages sought by the Plaintiffs herein include a claim for damages which are not for direct damages to the property shipped by the motor carrier. Therefore, those damages are properly classified as special damages. *See Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 765 (9th Cir. 1981). Special damages include economic damages such as loss of market due to delay, loss of profit, loss of income, goodwill, business reputation, future business, and loss of continued business. *See, Husman Constr. Co. v. Puralator Courier Corp.*, 832 F.2d 459, 462 (8th Cir. 1987); *Illinois Cent. Gulf R.R. Co. v. Southern Rock, Inc.*, 644 F.2d 1138, 1141 (5th Cir. 1981); *Turner Farms, Inc. v. Maine Central Railroad Co.*, 486 F.Supp. 694, 699 (D. Maine 1980)(citing *Hadley v. Baxendale*, 9 Ex. 341, 354 (1854); *B.F. McKernin & Co., Inc. v. United States Lines, Inc.*, 416 F.Supp. 1068, 1072 (S.D. N.Y. 1976); *Starmakers Publishing*

*Corp. v. Acme Fast Freight, Inc.*, 646 F.Supp. 780 (S.D. N.Y. 1986). To recover for special damages such as those sought by the Plaintiffs in this lawsuit, the motor carrier must have notice of the consequences or damages which may result from the delay ***prior to or at the time the bill of lading was issued.*** (emphasis supplied). *Id.* Notice to the carrier after the carrier's commencement of the transportation of circumstances which might cause special damages is ineffective. *See, Main Roads Bakery, Inc. v. Consolidated Freightways, Inc.*, 799 F.Supp. 26 (D.N.J. 1992). The Ninth Circuit in *Contempo Metal Furniture Co.* explained the reasoning for this rule as follows:

> The purpose of this rule [of notice of special damages at the time of contracting] is to enable the carrier to protect itself from special damages by negotiating special contractual terms, declining the shipment, or taking special precautions to avoid the loss. [citations omitted]. Because the carrier is taking risk that events appreciably beyond its control may prevent it from performing the contract, the carrier is entitled to notice of any unforeseeable consequences of nonperformance so that the carrier can protect itself. [citations omitted]. Notice after the contract is made does not afford opportunity for this self-protection.

*Contempo Metal Furniture Co.*, 661 F.2d at 765.

12. In the present case, the Plaintiffs readily admit that Landstar was not apprized that these special damages which Plaintiffs categorize as "lost income" could result by the shipment being damaged during transport, and in fact, admit that Landstar was not even contacted by the Plaintiffs and they never spoke to anyone at Landstar prior to the shipment arriving at final destination in Texas.[1] As such, the Plaintiffs can not now recover those damages from Landstar in this matter. *See, Husman Constr. Co.*, 832 F.2d at 462; *see also, Main Roads Bakery, Inc. v. Consolidated Freightways, Inc.*, 799 F.Supp. 26 (D.N.J. 1992)(where there is no notice at the time the bill of lading contract was made that the carrier's inability to deliver the cargo would result in special damages, no such special damages were awarded); *and see, Alpine Ocean Seismic Survey v. F.W. Myers & Co.*, 23 F.3d 946 (5th Cir.

---

[1] See, Statement of Undisputed Facts above, Nos. e., f., and g.

1994)(defendant was unaware of the contents of the boxes transported and could not reasonably foresee the risk of harm to plaintiff for late delivery of the boxes).

13.   As a matter of law, Landstar is entitled to partial summary judgment dismissing the Plaintiffs' claims for damages for "Lost Income" or more appropriately, lost profits because these are special damages not recoverable under the Carmack Amendment since, prior to or at the time the bill of lading was issued, Landstar did not have notice of the consequences or damages the Plaintiffs claim were incurred as a result of any damages which might be incurred during the transport the CNC Machine at issue.

**D.   Plaintiffs' Cannot Recover on Their Claim for Special Damages in the Form of Lost Profits/Lost Income as That Claim is Completely Speculative, the Amount of Loss Claimed Cannot be Shown by Competent Evidence with Reasonable Certainty, and, Therefore, are and Not Recoverable Under Applicable Texas Law.**

14.   Texas courts have consistently held that in order to recover lost profits the amount of the loss must be shown by competent evidence with reasonable certainty. *Helena Chem. Co. v. Wilkins*, 877 47 S.W.3d 486, 505 (Tex.2001); *Blase Indus. Corp. v. Anorad Corp.*, 442 F.3d 235, 238 (5th Cir. [Tex.] 2007)(lost profit damages cannot be based on evidence that is speculative, uncertain, contingent, or hypothetical; plaintiff must present evidence from which a jury can reasonably estimate amount of loss). The loss need not be susceptible to exact calculation [*Bowen v. Robinson*, 227 S.W.3d 86, 97 (Tex. App. – Houston [1st Dist.] 2006, pet. denied)], but the plaintiff must do more than show it suffered some lost profits. At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained with reasonable certainty. *Szczepanik v. First Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994); *Tabrizi v. Daz-Rez Corp.*, 153 S.W.3d 63, 68 (Tex. App. – San Antonio 2004, no pet.) (plaintiff's testimony concerning lost profits legally insufficient to support damage award for lost profits because it was not based on objective facts, figures

or data); and *Capital Metro v. Central of Tenn. Ry.*, 114 S.W.3d 573, 577-583 (Tex. App. – Austin 2003, pet. denied) (expert's testimony based on unfounded assumptions fell short of legal requirement that lost profits must be proven by competent evidence with reasonably certainty).

15.  Anticipated profits cannot be recovered when they are largely speculative, such as when they are dependent on uncertain and changing conditions, including market fluctuations, or the chances of business, or when there is no evidence from which they may be intelligently estimated. *Swinnea v. ERI Consulting Engineers, Inc.*, 236 S.W.3d 825, 838 (Tex. App. – Tyler 2007, pet. denied).

16.  The Texas Supreme Court, in reaffirming the application of the "reasonable certainty" rule announced in *Southwest Battery Corp. v. Owen*, [115 S.W.2d 1097, 1098-1099 (Tex. 1938)], approached the question from the negative perspective, outlining several factors that tend to show profits as too uncertain for recovery, including (1) Uncertain or changing market conditions; (2) Chancy business opportunities; (3) Promotion of untested products; (4) Entry into unknown or unviable markets; and (5) Success of new and unproven entity. *Texas Instruments v. Teletron Energy Mgt.*, 877 S.W.2d 276, 279 (Tex. 1994).

17.  When examining the facts of the case presented the Court herein, it becomes readily apparent that Plaintiffs cannot prove the amount of loss claimed by providing competent evidence with which demonstrates lost profits with reasonable certainty. To the contrary, the Plaintiffs' claims are completely based upon "evidence" that is speculative, uncertain, contingent, and hypothetical. In particular, Plaintiffs admit that G & B does not, and has never operated a machine shop where these type of machines were actually utilized in operation; G & B has only been operated out of an office which Plaintiffs describe as an executive suite at an office building (Bosong Dai dep. p. 13, l. 14 - p. 14, l. 25); the only business conducted to date by G & B with respect to these type of machines has been

to buy them for subsequent sale, or to trade them, but never to operate the machine in their business (Id., p. 16, l. 23 - p. 17, l. 18); G & B does not have any documents to support their claim that this CNC Machine could be utilized continuously 40 hours a week for, at that time, 100 weeks (Exhibit "6", Responses 1 and 2); Plaintiffs admit that they do not, and never have had a machine shop which they could utilize to operate the CNC machine at issue, and they don't have any employees who could operated the CNC machine at issue (Bosong Dai dep., p. 82, l. 19 - p. 83, l. 10, and 18 - 20; p. 90, l. 10 - 15); they admit that they don't and never have had any contracts with any clients in order to operate the CNC machine in a machine shop operation (Id., p. 84, l. 4 - 10; p. 86, l. 3 - p. 88, l. 2); and finally, the only "financials" Plaintiffs have provided for G & B show a <u>net loss</u> for the entire period of time covered in the <u>only</u> documents produced by G & B in this matter, which are for the year 2005 ($763), for the year 2006 $11, and for the year 2007 ($2). Based upon the only objective evidence which G & B has presented, it can readily be ascertained G & B has never made a profit in its business operations relating to this type of machinery. There is simply a complete lack of objective facts, figures, or data from which the amount of lost profits can be ascertained with reasonable certainty as relates to G & B's claim that it intended to operate the CNC machine at issue.

18.     For the additional reasons shown above, Landstar is entitled to partial summary judgment dismissing the Plaintiffs' claims for damages for "Lost Income" or more appropriately, lost profits.

**E.     The Declared Value of the Goods Contained on the Face of the Bill Of Lading Limits the Liability of Landstar, if any, for all of the Damages Sought By Plaintiffs.**

19.     Finally, Landstar's liability to the Plaintiffs with respect to all of the Plaintiffs' claims for damages, whether advanced as a breach of contract or tort claim, will be subject to the declared "Extended Value" provision clearly set forth on the face of the bill of lading *prepared by the shipper* for the shipment at issue. Under the current version of the Carmack Amendment a carrier of property

in interstate commerce that damages a shipment generally is liable "for the actual loss or injury to the property caused by" the carrier. 49 U.S.C. § 14706(a)(1). However, a carrier may limit its liability "to a value established by written or electronic declaration of the shipper **or** by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." *Id.* § 14706(c)(1)(A). In addition to a "declaration" or an "agreement," the statute requires the carrier to provide "to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to the shipment, or agreed to between the shipper and carrier, is based." *Id.* § 14706(c)(1)(B); *see also id.* § 13710.

20. One way a carrier and shipper might agree in writing to a limitation of liability is if a) the *carrier* prepares a bill of lading which incorporates the carrier's tariff by reference, b) that tariff contains an applicable limitation of liability provision and c) the shipper agrees to and signs the bill of lading. *See, Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1270 (11th Cir. 2001)(citation omitted). Likewise, as is the case presented this Court, the *shipper* might prepare a similar bill of lading that the parties agree to and sign. *Id.*, at 1270.

21. In the present case, the face of the bill of lading prepared and signed by the shipper, Delphi, and accepted by Landstar at the time the goods were tendered for transportation expressly provided as follows:

| CUSTOMER/SUPPLIER PART # | CHASSIS SYSTEMS PART# | DESCRIPTION/PURPOSE | QTY SHIPPED | UNIT PRICE | EXTENDED VALUE |
|---|---|---|---|---|---|
| N/A | | TOYODA GMS-130 TYPE TH-1257M, 4AXIS CNC HORIZ. MACHINE S/N MHD-800-TH-12257 ROTARY TABLE, CHIP CONVEYOR & TRANSFER EQUIP SOLD IN DOVE BID AUCTION REF. INVOICE # DE... | 1 | | |
| | | INBOUND FREIGHT | | | |
| | | OUTBOUND FREIGHT | | | |
| | | SALES TAX | | | |
| | | HANDLING CHARGE | | | |
| | | | | **TOTAL** | **$10,000** |

(See, Exhibit "4" hereto).

22.   The Plaintiffs do not dispute that this shipping document was prepared by the shipper, Delphi, and do not dispute that it contained a declared/extended value for the goods being shipped of $10,000. (See, Bosong Dai dep., p. 54, l. 1 - p. 56, l. 3; Exhibit "4"). It is also undisputed that the Plaintiffs, without prior inspection, or viewing, except for the viewing of about five (5) photos on the internet, and without asking any questions of the seller, purchased the CNC Machine at issue "AS IS, WHERE IS" and "WITH ALL FAULTS" at an internet auction for the sum of $10,000 – the same value as declared on the face of the bill of lading/shipping document. (See, Bosong Dai dep., p. 18, l. 4 - p. 22, l. 3; p. 28, l. 4 - p. 29, l 24; Exhibit "2"; and Gary Suttle dep., p. 9, ll. 8 - 25). The Plaintiffs, as the consignees, and Delphi, as the shipper have accepted the bill of lading/shipping documents prepared by Delphi in this matter as evidenced by the Plaintiffs attempt to enforce liability for the damages to the goods shipped under this bill of lading. *See, Johnson v. Bekins Van Lines Co.,* 808 F.Supp. 545 (E.D.Tex. 192), *affirmed* 995 F.2d 221, *cert. denied,* 114 S.Ct. 471, 510 U.S. 977, 126 L.Ed.2d 422. Thus, <u>the value of the goods declared by the shipper on the face of the bill of lading is the maximum compensation that may be recovered against Landstar, as the carrier,</u> with respect to the CNC machine

- 14 -

at issue. *See, Shippers Nat. Freight Council, Inc. v. I.C.C.*, 712 F.2d 740 (2nd Cir. 1983), *cert. denied*, 104 S.Ct. 3534, 467 U.S. 1251, 82 L.Ed.2d 839; *Bio-Lab, Inc. v. Pony Exp. Courier Corp.*, 911 F.2d 1580 (11th Cir. 1990); and *Nippon Fire & Marine Inc. Co., Ltd. v. Holmes Transp., Inc.*, 616 F.Supp. 610 (S.D.N.Y. 1985). The Eight Circuit in *Hopper Furs, Inc.* addressed this issue as follows:

> ... the federal statute permitting limitation of carrier liability is "comprehensive enough to embrace all damage resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." ... All actions against a common carrier, whether designated as tort or contract actions, are governed by the federal statute, and "no recovery can be had in excess of the amount permitted by [the] terms" of the contract.

*Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F.2d at 1264, *citing Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 30, 57 S.Ct. 73, 74, 81 L.Ed. 20 (1931); *see also, W.C. Smith, Inc. v. Landstar Freight Systems, Inc.*, 596 F.Supp. 515, 517 (E.D.Penn.1983)(holding shipper expressly agreed to terms of bill of lading and carrier's tariff which provided for lowest released value where no value was affirmatively filled in blanks and made an absolute, deliberate and well-informed choice in leaving released value spaces blank thereby limiting carrier's liability for shipment).

23.    The undisputed facts of this matter demonstrate that Delphi, as the shipper, made an absolute, deliberate and well informed choice in declaring the value of the goods being transported by Landstar to be the sum of $10,000 as reflected by the "Extended Value" Delphi itself declared on the face of the bill of lading/shipping documents. (See, Exhibit "4"). That declared value was certainly reasonable under the circumstances as that was the exact sum which the Plaintiffs purchased the CNC machine for at the Dovebid internet auction. See, Bosong Dai dep., pp. 18, l. 4 - p. 22, l. 3; p. 28, l. 4 - p. 29, l 24; Exhibit "2"; and Gary Suttle dep., p. 9, ll. 8 - 25). The Plaintiffs cannot now complain about the consequences of their shipper, Delphi, having expressly limited the liability of Landstar by Delphi's

conduct in declaring the value to be exactly what the CNC machine was purchased for by the Plaintiffs. Additionally, the Plaintiffs certainly could have chosen to attempt to increase Landstar's liability simply by instructing Delphi to declare a higher value on the bill of lading. *See, W.C. Smith, Inc.,* 596 F. Supp. at 517.

24. As shown above, Landstar is entitled to partial summary judgment holding that Landstar's maximum liability, if any, for all damages claimed by the Plaintiffs herein is limited to the total sum of $10,000.00, if any, plus freight charges actually paid by Plaintiffs with respect to any and all claims advanced by Plaintiffs as relate to the goods claimed to be damaged.

### III. CONCLUSION

25. Based upon the undisputed facts set forth above, Landstar moves the Court to grant Landstar partial summary judgment as follows:

(1) dismissing with prejudice all of Plaintiffs' state and common law claims for breach of contract, negligence, and to the extent pled, for recovery of attorneys fees, against Defendant Landstar since, as a matter of law, the claims of Plaintiffs against Defendant Landstar are governed by and controlled by the Interstate Commerce Act, and, in particular, the Carmack Amendment, 49 U.S.C. § 14706 which is paramount to, and pre-emptive of all state and common law claims;

(2) that Plaintiffs take nothing on their claim for damages in the form of lost profits/lost income as those are claims for special damages which are not recoverable under the Carmack Amendment under the facts presented this Court since those damages are consequential, special or incidental damages, and they are not for damage or loss to the CNC Machine transported by Landstar;

(3) that Plaintiffs take nothing on their claim for special damages in the form of lost profits/lost income as they are completely speculative, and the amount of loss claimed cannot be shown by competent evidence with reasonable certainty as required by applicable Texas law; and

(4) that Landstar's liability, if any, for all damages sought by Plaintiff herein is limited by the bill of lading provision expressly declaring the value of the goods transported, the CNC Machine, to be the sum of $10,000.00 (plus freight charges actually paid), which

equates to the purchase price of the used machinery Plaintiffs claim was damaged by Landstar.

Respectfully submitted,

**ROBERTS, CUNNINGHAM & STRIPLING, LLP**

By: s/ H. N. Cunningham III
H. N. Cunningham, III
Attorney-In-Charge
State Bar No. 0524690
S.D. of Tex. Bar No. 32573
800 Preston Commons West
8117 Preston Road
Dallas, Texas 75225
(214) 696-3200
(214) 696-5971 facsimile

**ATTORNEYS FOR DEFENDANT LANDSTAR INWAY, INC.,**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on the following counsel of record in accordance with the Fed. R. Civ. P. on the 13th day of February, 2009 to:

Chad Matthews
Matthews & Forester
3027 Marina Bay Drive, Suite 320
League City, Texas 77573

s/ James C. Baker
James C. Baker