GARY SUTTLE AND BOSONG DAI,, §
INDIVIDUALLY, AND d/b/a §
G & B TECHNOLOGIES, INC. §
§
     Plaintiffs, §
§
vs. §    CIVIL ACTION NO. 4:08-CV-00858
§
LANDSTAR INWAY, INC., §
§
     Defendant. §

## DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

COMES NOW, Defendant, LANDSTAR INWAY, INC. ("Landstar"), and files this Defendant's

Reply to Plaintiffs' Response, and in support thereof shows the Court as follows:

**A.    Landstar's Motion For Partial Summary Judgment.**

    1.    Plaintiffs, GARY SUTTLE AND BOSONG DAI, d/b/a G & B TECHNOLOGIES, INC.

("Plaintiffs"), filed suit in the 269th Judicial District Court of Harris County, Texas on January 18, 2008.

Plaintiffs' Original Petition ("Petition") states that Plaintiffs seek recovery of damages to a CNC

Machine which was transported by Landstar from the shipper, Delphi located in Dayton, Ohio to

Plaintiffs in League City, Texas. Plaintiffs' claim the CNC Machine suffered water damages during

transport. (Petition, ¶ IV). <u>Plaintiffs also judicially admit they paid Landstar for the transportation</u>

<u>services rendered by Landstar for the shipment of the CNC Machine at issue.</u> (Petition, p. 2, ¶ IV and

p. 3, ¶ V (1).

    2.    In Defendant Landstar Inway, Inc.'s Motion for Partial Summary Judgment ("Def's

Motion"), Landstar moved for summary judgment dismissing with prejudice all of Plaintiffs' state and

common law claims for breach of contract, negligence, and to the extent pled, for recovery of attorneys fees, against Defendant Landstar because the claims of Plaintiffs against Defendant Landstar are governed by and controlled by the Interstate Commerce Act, and, in particular, the Carmack Amendment, 49 U.S.C. § 14706 which is paramount to, and pre-emptive of all state and common law claims.

3.      Landstar also moved for summary judgment on Plaintiffs' claims for damages in the form of lost profits/lost income as those are claims for special damages which are not recoverable under the Carmack Amendment <u>under the facts presented this Court</u> since, prior to or at the time the bill of lading was issued, Landstar did not have notice of the consequences or damages the Plaintiffs claim were incurred as a result of any damages claimed to have been incurred during the transport of the CNC Machine at issue.

4.      Additionally, Landstar sought summary judgment on Plaintiffs' claim for special damages in the form of lost profits/lost income as those claims are completely speculative, and the amount of loss claimed cannot be shown by competent evidence with reasonable certainty. Therefore, lost profits are not recoverable under applicable Texas law.

5.      Finally, Landstar sought summary judgment that Landstar's liability, if any, for all <u>damages sought by Plaintiff herein are limited by the bill of lading provision expressly declaring the value of the goods transported, the CNC Machine, to be the sum of $10,000.00 (plus freight charges actually paid)</u>, which value, not surprisingly, equated to the purchase price of the used machinery Plaintiffs claim was damaged by Landstar during transportation.

**B.     Plaintiffs' Response and Landstar's Reply Thereto.**

    **(1)     Landstar Is a Motor Carrier and Plaintiffs' Claims Are Pre-Empted by the Carmack Amendment**

6.     In response, Plaintiffs' claim that the Carmack Amendment does not apply because Landstar has not demonstrated it was a "motor carrier" as opposed to a "motor private carrier" as defined under the Interstate Commerce Act. *See,* 49 U.S.C §§ 13102 (14) and (15). In reply, Landstar states competent summary judgment evidence <u>already before the Court</u> establishes Landstar was a "motor carrier" with respect to this shipment. In fact, that same evidence also demonstrates Landstar could not possibly have operated as a "motor private carrier" for this shipment as Plaintiffs suggest was a possibility. To be a "motor private carrier" the person transporting the goods has to be the "owner, lessee, or bailee of the property bing transported..." 49 U.S.C §§ 13102 (15)(B). Before motor vehicle operation can be held to constitute private carriage and thus not subject to regulation by the Commission [now Board], it must appear **no person** <u>other than owner has any right to control, direct and dominate transportation</u> **and** <u>that</u> **no person** <u>is</u> in substance <u>engaged in business of transportation of property</u> **for hire**. (emphasis added) *See, Professional Drivers Services, Inc. v. Interstate Commerce Commission,* 376 F.Supp. 536 (M.D. Tenn. 1974). In the present case, it is undisputed the Plaintiffs were the owners of the CNC machine being transported by Landstar as they had bought the machine at auction for $10,000. (See, Bosong Dai dep., p. 18, l. 4 - p. 22, l. 3; p. 28, l. 4 - p. 29, l. 24; Exhibit "2" to Def.'s Motion). Landstar was not a trucking company owned or controlled by the Plaintiffs' which it would have to be in order to be considered a "motor private carrier." Further, the Plaintiffs' Petition judicially admits that "Plaintiffs ... prior to October 13, 2006, .... had entered into an agreement with and ***had paid Defendant*** to protect and cover the machine with a "tarp" from weather elements and other debris <u>while transporting the machine from one destination to another for Plaintiffs.</u>" (Emphasis added) (Petition,

p. 2, ¶ IV). *See, Lockwood v. Wolf Corp.*, 629 F.2d 603, 611 (9th Cir. 1980)(admissions by the opposing party in his or her pleadings (even if unverified) can be utilized as a basis for summary judgment and are admissible evidence (FRE 801(d)(2)). The deposition of Bosong Dai and the related shipping documents also establish he retained a motor carrier to transport the goods at issue from Ohio to Texas, and paid for those services. (See, Def's Motion, Exhibit "1", p. 43, 55, 56; see also, Exhibits "3" and "4" to Def's Motion; and see Bosong Dai Dep., pp. 35 - 38 (Exhibit "1" hereto)). Finally, the attached Declaration of John O'Dell, and the information for Landstar Inway, Inc. available to the public on the Federal Motor Carrier Safety Administrations published web site (www.fmsca.dot.gov/) both confirm the fact that Landstar Inway, Inc. is not a motor private carrier, and only operates as a for-hire motor carrier in interstate commerce. (See, Exhibit "2," ¶¶s 3 and 4, and Exhibit "3" hereto). Therefore, as a matter of law the claims of Plaintiffs against Defendant Landstar are governed by, and controlled by the Interstate Commerce Act, and, in particular, the Carmack Amendment, 49 U.S.C. § 14706. The Carmack Amendment is paramount and pre-emptive of all state law remedies and precludes Plaintiff's claims other than as provided by the Carmack Amendment. *See, Hoskins v. Bekins Van Lines,* 343 F.3d 769, 778 (5th Cir. 2003)(holding complete pre-emption doctrine applies, and therefore, the Carmack Amendment provides the exclusive cause of action for such claims).

    **(2)**    **Plaintiffs Cannot Recover Damages For Lost Profits/Lost Income Under The Carmack Amendment Because Landstar Did Not Have Notice Of The Consequences Or Damages Claimed To Have Resulted From Any Damages to The Goods At Issue With Respect to This Shipment *Prior To Or At The Time The Bill Of Lading Was Issued.***

    7.    In response to the above, <u>Plaintiffs' completely ignore the numerous cases which clearly establish a carrier must be apprized of or have notice of the special damages claimed by Plaintiffs with respect to this shipment *prior to or at the time the bill of lading was issued.*</u> Plaintiffs simply assert lost

- 4 -

profits are also a proper measure of damages under the Carmack Amendment, and rely upon a district court case from Colorado. That single authority, *Eastman Kodak Co. v. Westway Motor Freight*, 751 F.Supp. 1481 (D.Co. 1990), is factually different from this case in that the type of lost profits sought by the Plaintiffs in *Eastman Kodak* were on the sale of the destroyed goods at destination, which Kodak claimed should include the lost profits on that particular sale. The Court in *Eastman Kodak* merely determined the contract price on the lost sale to be determinative of *market value*. Here the Plaintiffs claim for lost profits has nothing to do with any specific lost sale, although Plaintiffs' Initial Disclosures made a vague reference to supposed lost sales to an unidentified "international investor."[1] (Def's Motion, Exhibit "5", p. 4). Rather, the Plaintiffs in this matter have simply fabricated a claim for lost profits based upon an unsupported assertion that they could have set this machine up in a warehouse and operated the machine themselves. (See, Plaintiffs' Response, pp. 2 and 5). The Plaintiffs only evidence is the conclusory and hearsay[2] claim by Bosong Dai that an equipment operator told him this machine could be utilized at a rate of $150 - $200 per hour. (See, Plaintiffs' Response, p. 5). Plaintiffs claim this single inadmissible conclusion is sufficient to support their claim for lost profits on the operation of this CNC Machine.

8.     Plaintiffs readily admit that Landstar was not apprized that these special damages which Plaintiffs categorize as "lost income" could result by the shipment being damaged during transport, and

---

[1]Plaintiffs claim of lost profits on a supposed sale of this CNC machine directly contradicts their claim they intended to operate this machine from a warehouse.

[2]Landstar objects to this testimony by Bosong Dai based upon hearsay and speculation. The Court should not consider this evidence. (See, Bosong Dai dep., pp. 86 -87 (Exhibit "1" to Def's Motion)(Mr. Dia merely talked to another machine shop operator to obtain this general quote for operations of similar machines. He had no experience operating any machines of this type and has no documents to support this conclusory assertion. (Id., p. 82, l. 19 - p. 83, l. 10, and 18 - 20; p. 90, l. 10 - 15; p. 84, l. 4 - 10; p. 86, l. 3 - p. 88, l. 2).

in fact, admit that Landstar was not even contacted by the Plaintiffs and they never spoke to anyone at Landstar prior to the shipment arriving at final destination in Texas.[3] As such, the Plaintiffs can not now recover those damages from Landstar in this matter. *See, Husman Constr. Co.*, 832 F.2d at 462; *see also, Main Roads Bakery, Inc. v. Consolidated Freightways, Inc.*, 799 F.Supp. 26 (D.N.J. 1992)(where there is no notice at the time the bill of lading contract was made that the carrier's inability to deliver the cargo would result in special damages, no such special damages were awarded); *and see, Alpine Ocean Seismic Survey v. F.W. Myers & Co.*, 23 F.3d 946 (5th Cir. 1994)(defendant was unaware of the contents of the boxes transported and could not reasonably foresee the risk of harm to plaintiff for late delivery of the boxes).

9.    As a matter of law, Landstar is entitled to partial summary judgment dismissing the Plaintiffs' claims for damages for "Lost Income" or more appropriately, "lost profits" based upon their claim they could operate this CNC machine for a profit because these are special damages not recoverable under the Carmack Amendment since, prior to or at the time the bill of lading was issued, Landstar did not have notice of the consequences or damages the Plaintiffs claim were incurred as a result of any damages which might be incurred during the transport the CNC Machine at issue. The Plaintiffs' claim for lost profits is a claim the Plaintiffs bear the burden of proof at trial on each element of the claim against Defendant, and, therefore, it is Plaintiffs' burden on summary judgment to establish the existence of a genuine issue of material fact as to all elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The Plaintiffs' have completely failed to produce any competent summary judgment evidence establishing their claim for lost profits on the "plan" to operate this CNC machine.

_____

[3]See, Def's Motion, Statement of Undisputed Facts above, Nos. e., f., and g.

**(3)   Plaintiffs' Cannot Recover on Their Claim for Special Damages in the Form of Lost Profits/Lost Income as That Claim is Completely Speculative, the Amount of Loss Claimed Cannot be Shown by Competent Evidence with Reasonable Certainty, and, Therefore, are and Not Recoverable Under Applicable Texas Law.**

10.     Once again, the Plaintiffs complete offer of proof to establish that they are entitled to lost profits from their "plan" to operate this machine is the fabricated claim that they have lost profits of approximately $600,000 based upon an unsupported assertion that they could have set this machine up in a warehouse and operated the machine themselves. (See, Plaintiffs' Response, pp. 2 and 5). The Plaintiffs only evidence is the same inadmissible, conclusory and hearsay[1] claim by Bosong Dai that an equipment operator told him this machine could be utilized at a rate of $150 - $200 per hour. (See, Plaintiff's Response, p. 5). Plaintiffs claim this single inadmissible conclusory and hearsay statement is sufficient to support their claim for lost profits on the operation of this CNC Machine.

11.     Simply put, the Plaintiffs cannot prove the amount of loss claimed by providing competent evidence with which demonstrates lost profits with reasonable certainty. To the contrary, as demonstrated in Defendant's Motion, the Plaintiffs' claims are completely based upon "evidence" that is speculative, uncertain, contingent, and hypothetical. There is simply a complete lack of objective facts, figures, or data from which the amount of lost profits can be ascertained with reasonable certainty as relates to G & B's claim that it intended to operate the CNC machine at issue. For the additional reasons, Landstar is entitled to partial summary judgment dismissing the Plaintiffs' claims for damages for "Lost Income" or more appropriately, lost profits.

---

[1]See Landstar's objections in footnote 2 above.

FAULTS" at an internet auction for the sum of $10,000 – the same value as declared on the face of the bill of lading/shipping document. (See, Bosong Dai dep., p. 18, l. 4 - p. 22, l. 3; p. 28, l. 4 - p. 29, l 24; Exhibit "2"; and Gary Suttle dep., p. 9, ll. 8 - 25). The Plaintiffs, as the consignees, and Delphi, as the shipper have accepted the bill of lading/shipping documents prepared by Delphi in this matter as evidenced by the Plaintiffs attempt to enforce liability for the damages to the goods shipped under this bill of lading. *See, Johnson v. Bekins Van Lines Co.,* 808 F.Supp. 545 (E.D.Tex. 192), *affirmed* 995 F.2d 221, *cert. denied,* 114 S.Ct. 471, 510 U.S. 977, 126 L.Ed.2d 422. Thus, the value of the goods declared by the shipper on the face of the bill of lading is the maximum compensation that may be recovered against Landstar, as the carrier, with respect to the CNC machine at issue. *See, Shippers Nat. Freight Council, Inc. v. I.C.C.,* 712 F.2d 740 (2nd Cir. 1983), *cert. denied,* 104 S.Ct. 3534, 467 U.S. 1251, 82 L.Ed.2d 839; *Bio-Lab, Inc. v. Pony Exp. Courier Corp.,* 911 F.2d 1580 (11th Cir. 1990); and *Nippon Fire & Marine Inc. Co., Ltd. v. Holmes Transp., Inc.,* 616 F.Supp. 610 (S.D.N.Y. 1985); *Hopper Furs, Inc. v. Emery Air Freight Corp.,* 749 F.2d at 1264, *citing Southeastern Express Co. v. Pastime Amusement Co.,* 299 U.S. 28, 30, 57 S.Ct. 73, 74, 81 L.Ed. 20 (1931); *see also, W.C. Smith, Inc. v. Landstar Freight Systems, Inc.,* 596 F.Supp. 515, 517 (E.D.Penn.1983)(holding shipper expressly agreed to terms of bill of lading and carrier's tariff which provided for lowest released value where no value was affirmatively filled in blanks and made an absolute, deliberate and well-informed choice in leaving released value spaces blank thereby limiting carrier's liability for shipment).

16.     The undisputed facts of this matter demonstrate that Delphi, as the shipper, made an absolute, deliberate and well informed choice in declaring the value of the goods being transported by Landstar to be the sum of $10,000 as reflected by the "Extended Value" Delphi itself declared on the face of the bill of lading/shipping documents. (See, Exhibit "4"). That declared value was certainly

1 of Plaintiffs' Response that "Plaintiffs' understood the machines to be ready for operation'" with a reference to Bosong Dai's deposition at page 17, line 5-12. A reading of that portion of the deposition does not support a claim these machines were operational, and, in fact, has nothing to do with the condition of these machines.

14.    Again, in the present case, the face of the bill of lading prepared and signed by the shipper, Delphi, and accepted by Landstar at the time the goods were tendered for transportation expressly provided as follows:

| CUSTOMER/SUPPLIER PART # | CHASSIS SYSTEMS PART# | DESCRIPTION/PURPOSE | QTY SHIPPED | UNIT PRICE | EXTENDED VALUE |
|---|---|---|---|---|---|
| N/A | | TOYODA GMS-130 TYPE TII -1257M, 4AXIS CNC HORIZ. MACHINE S/N MHD-800-TH-12257 ROTARY TABLE, CHIP CONVEYOR & TRANSFER EQUIP SOLD IN DOVE BID AUCTION REF. INVOICE # DE... | 1 | | |
| | | INBOUND FREIGHT OUTBOUND FREIGHT SALES TAX HANDLING CHARGE | | **TOTAL** | **$10,000** |

(See, Exhibit "4" to Def's Motion).

15    The Plaintiffs do not dispute that this shipping document was prepared by the shipper, Delphi, and do not dispute that it contained a declared/extended value for the goods being shipped of $10,000. (See, Bosong Dai dep., p. 54, l. 1 - p. 56, l. 3; Exhibit "4"). Additionally, the actual facts relating to this purchase by the Plaintiffs demonstrate that the Plaintiffs, without prior inspection, or viewing, except for the viewing of about five (5) photos on the internet, and without asking any questions of the seller, purchased the CNC Machine at issue "AS IS, WHERE IS" and "WITH ALL

---

[6]Landstar objects to this as being nothing more than conclusory speculation and hearsay Mr. Bosong Dai.

FAULTS" at an internet auction for the sum of $10,000 – the same value as declared on the face of the bill of lading/shipping document. (See, Bosong Dai dep., p. 18, l. 4 - p. 22, l. 3; p. 28, l. 4 - p. 29, l 24; Exhibit "2"; and Gary Suttle dep., p. 9, ll. 8 - 25). The Plaintiffs, as the consignees, and Delphi, as the shipper have accepted the bill of lading/shipping documents prepared by Delphi in this matter as evidenced by the Plaintiffs attempt to enforce liability for the damages to the goods shipped under this bill of lading. *See, Johnson v. Bekins Van Lines Co.,* 808 F.Supp. 545 (E.D.Tex. 192), *affirmed* 995 F.2d 221, *cert. denied,* 114 S.Ct. 471, 510 U.S. 977, 126 L.Ed.2d 422. Thus, <u>the value of the goods declared by the shipper on the face of the bill of lading is the maximum compensation that may be recovered against Landstar, as the carrier</u>, with respect to the CNC machine at issue. *See, Shippers Nat. Freight Council, Inc. v. I.C.C.,* 712 F.2d 740 (2nd Cir. 1983), *cert. denied,* 104 S.Ct. 3534, 467 U.S. 1251, 82 L.Ed.2d 839; *Bio-Lab, Inc. v. Pony Exp. Courier Corp.,* 911 F.2d 1580 (11th Cir. 1990); and *Nippon Fire & Marine Inc. Co., Ltd. v. Holmes Transp., Inc.,* 616 F.Supp. 610 (S.D.N.Y. 1985); *Hopper Furs, Inc. v. Emery Air Freight Corp.,* 749 F.2d at 1264, *citing Southeastern Express Co. v. Pastime Amusement Co.,* 299 U.S. 28, 30, 57 S.Ct. 73, 74, 81 L.Ed. 20 (1931); *see also, W.C. Smith, Inc. v. Landstar Freight Systems, Inc.,* 596 F.Supp. 515, 517 (E.D.Penn.1983)(holding shipper expressly agreed to terms of bill of lading and carrier's tariff which provided for lowest released value where no value was affirmatively filled in blanks and made an absolute, deliberate and well-informed choice in leaving released value spaces blank thereby limiting carrier's liability for shipment).

16.     The undisputed facts of this matter demonstrate that Delphi, as the shipper, made an absolute, deliberate and well informed choice in declaring the value of the goods being transported by Landstar to be the sum of $10,000 as reflected by the "Extended Value" Delphi itself declared on the face of the bill of lading/shipping documents. (See, Exhibit "4"). That declared value was certainly

reasonable under the circumstances as that was the exact sum which the Plaintiffs purchased the CNC machine for at the Dovebid internet auction. (See, Bosong Dai dep., pp. 18, l. 4 - p. 22, l. 3; p. 28, l. 4 - p. 29, l 24; Exhibit "2"; and Gary Suttle dep., p. 9, ll. 8 - 25).

17.     As shown above, Landstar is entitled to partial summary judgment holding that Landstar's maximum liability, if any, for all damages claimed by the Plaintiffs herein is limited to the total sum of $10,000.00, if any, plus freight charges actually paid by Plaintiffs with respect to any and all claims advanced by Plaintiffs as relate to the goods claimed to be damaged.

18.     Plaintiffs request for a continuance on this issue to locate a person with Delphi to talk about the condition of the machine at point of origin fails to comply with the requirements of Rule 56(f) Fed. R. Civ. P. to justify a continuance. Furthermore, discovery in this matter has closed, and Plaintiffs have never identified any specific person from Delphi during discovery who has knowledge of those facts. (See, Def's Motion, Exhibit "5"). This matter is set for trial in May, 2009, and the issues presented by Defendant's Motion for Partial Summary Judgment are ripe for determination.

Respectfully submitted,

**ROBERTS, CUNNINGHAM &
STRIPLING, LLP**

By:     s/ H. N. Cunningham III
        H. N. Cunningham, III
        Attorney-In-Charge
        State Bar No. 0524690
        S.D. of Tex. Bar No. 32573
        800 Preston Commons West
        8117 Preston Road
        Dallas, Texas 75225
        (214) 696-3200
        (214) 696-5971 facsimile

**ATTORNEYS   FOR   DEFENDANT
LANDSTAR INWAY, INC.,**

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on the following counsel of record in accordance with the Fed. R. Civ. P. on the 9th day of March, 2009 to:

Chad Matthews
Matthews & Forester
3027 Marina Bay Drive, Suite 320
League City, Texas 77573

s/ James C. Baker
James C. Baker